UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BROADCAST MUSIC, INC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-38 (AJT/TCB) |
| | ) |
| GT LEESBURG 2014, LLC d/b/a THE | ) |
| GREEN TURTLE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on Plaintiffs' Motion for Default Judgment (Dkt. 21). After representatives for Defendants failed to respond to Plaintiffs' motion or to appear at the hearing on June 28, 2019, the matter was taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that Plaintiffs' Motion for Default Judgment be GRANTED.

I. INTRODUCTION

A. Background

On January 9, 2019, Broadcast Music, Inc. ("BMI") along with four (4) other entities (together, the "Plaintiffs") filed this lawsuit against GT Leesburg 2014, LLC ("GT Leesburg"), Brent Byer, David Byer,[2] and Darlene Byer (together, the "Defendants"), alleging four claims of

---

1. Relevant filings before the Court include Plaintiffs' Complaint (Dkt. 1) ("Compl."); Plaintiffs' Memorandum in Support of Motion for Default Judgment (Dkt. 22) ("Mem. Supp."); Declaration of Pamela Williams (Dkt. 22-1) ("Williams Decl."); Declaration of Brian Mullaney (Dkt. 22-2) ("Mullaney Decl."); Affidavit of David M. Asbury in Support of Plaintiffs' Request for Attorneys' Fees (Dkt. 22-3) ("Fee Decl."); and all attachments and exhibits submitted with those filings.

2. As Plaintiffs clarified in their default judgment briefing, Brent Byer and David Byer refer to the same natural person. (Mem. Supp. at 1 n.1.) Defendant's full name is David Brent Byer, but "goes by the name, 'Brent Byer.'" (*Id.*)

copyright infringement. (Compl. ¶ 24.) The alleged infringement all took place at an establishment known as The Green Turtle, located at 603 Potomac Station Drive, Leesburg, VA 20176 (the "Establishment"). (*Id.* ¶¶ 9, 22-23.) Plaintiffs now seek an entry of default judgment that awards them monetary damages, attorney's fees and costs, interest, and injunctive relief.[3] (Pl.'s Mem. Supp. at 5.)

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over the defaulting parties, and venue must be proper.

The Court has subject-matter jurisdiction over this action. A federal district court has original jurisdiction when an action involves a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs assert copyright infringement claims against Defendants pursuant to the Copyright Act, a federal statute. (Compl. ¶ 1.) Accordingly, the Court has subject-matter jurisdiction over the copyright infringement claims against Defendants pursuant to 28 U.S.C. §§ 1331 and 1338(a).

The Court has personal jurisdiction over Defendants in this action. The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)).

GT Leesburg, a Virginia limited liability company, maintains and operates the Establishment, which is located in this district. (Compl. ¶ 9.) Therefore, GT Leesburg has "continuous and systematic" activities within Virginia to be subject to general jurisdiction. *Cf.*

---

3. Plaintiffs are not seeking default judgment against Defendant Darlene Byer. (Dkt. 19 at 1 n.2.)

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (corporations subject to general jurisdiction in places where they are "fairly regarded as at home" (quotations omitted)). On the other hand, Plaintiffs failed to specifically allege the residency or domicile of Defendant David "Brent" Byer. Nonetheless, the undersigned finds that the Court also possesses personal jurisdiction over Brent Byer under the specific jurisdiction inquiry as he owns GT Leesburg, operates, maintains, and controls the Establishment, and is directly involved with the harmful conduct alleged in the Complaint. (Compl. ¶¶ 12-14, 18-20, 22-30.) Moreover, the undersigned also notes that personal jurisdiction might also be appropriate as Brent Byer was personally served while within this judicial district. *See Burnham v. Superior Court*, 495 U.S. 604, 610-11 (1990); *Blackson v. Blackson*, 579 S.E. 2d 704, 711-12 (Va. Ct. App. 2003).

For similar reasons, the undersigned finds that Venue in this action is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that all defaulting parties have been properly served. Pursuant to Federal Rule of Civil Procedure 4(e)(2)(A), an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally. For corporations, partnerships, or associations, Federal Rule of Civil Procedure 4(h)(1)(A) provides that service may be effected in the manner prescribed in Rule 4(e)(1) for serving individuals. Rule 4(e)(1) provides that service may be effected pursuant to the laws of the forum state. Virginia law provides that service on a limited liability company may be effected by serving its registered agent. Va. Code § 13.1-1018. Rule 4(h)(1)(B) provides that service upon a business entity may be effected by serving an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

On January 16, 2019, Plaintiffs' process server personally served David "Brent" Byer both individually and as the registered agent for GT Leesburg. (Dkts. 14-16.) Therefore, the undersigned finds that Defendants were properly served with the summons and complaint.

### D. Grounds for Default Judgment

The entry of default judgment may be appropriate when a defendant has failed to appear in a case. *See* Fed. R. Civ. P. 55. To date, Defendants have not appeared or otherwise participated in these proceedings. On May 3, 2019, Plaintiffs filed their Request for Entry of Default, seeking entries of default for Defendants GT Leesburg and David "Brent" Byer. (Dkt. 19.) On May 7, 2019, the Clerk of the Court issued the Entry of Default for those Defendants. (Dkt. 20.) On May 23, 2019, Plaintiffs filed their Motion for Default Judgment. The undersigned U.S. Magistrate Judge then held a hearing on Plaintiffs' Motion for Default Judgment on June 28, 2019, at which no representative for Defendants appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation. (Dkt. 26.)

## II. <u>FINDINGS OF FACT</u>

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiffs established the following facts.

Plaintiff BMI is a Delaware corporation with its principal place of business in New York, New York. (Compl. ¶ 3.) The other Plaintiffs are a mixture of corporations, unincorporated business associations, and trusts. (*Id.* ¶¶ 5-8.) The other Plaintiffs own the copyrights in the musical compositions that are the subject of this suit. (*Id.* ¶ 4; Williams Decl. ¶ 4.)

BMI, through agreement with copyright owners, acquires non-exclusive performance rights to musical compositions. (Compl. ¶¶ 3-4; Williams Decl. ¶ 2.) BMI has been granted the right to license the public performance rights in fourteen (14) million copyrighted musical

4

compositions ("BMI Repertoire"). (Compl. ¶ 3; Mem. Supp. at 2.) Upon acquiring those rights, BMI then grants broadcasters and the owners and operators of public establishments such as concert halls and restaurants, the right to publicly perform any of the works in BMI's Repertoire through "blanket license agreements." (Williams Decl. ¶ 2.) BMI operates as a non profit-making performing rights organization; all money it collects in license fees is distributed as royalties to the copyright owners after deducting operating expenses and reasonable reserves. (*Id.* ¶ 3.) The Plaintiffs in this case granted BMI the right to publicly perform their copyrighted music compositions and to issue public performance license agreements to music users. (*Id.* ¶ 5.)

Defendant GT Leesburg is a Virginia limited liability company that operates, maintains, and controls The Green Turtle, located at 603 Potomac Station Drive, Leesburg, Virginia 20176. (Compl. ¶ 9; Mullaney Decl. ¶ 3.) Brent Byer is an owner of GT Leesburg. (Compl. ¶¶ 13, 19.) He is responsible for the operation and management of both GT Leesburg and the Establishment—having a direct financial interest in both. (*Id.* ¶¶ 12-14, 18-20.)

Prior to June 2016, BMI learned that the Establishment publicly performed copyrighted music works in BMI's Repertoire without permission. (Compl. ¶ 22; Mullaney Decl. ¶ 3.) On June 1, 2016, BMI sent a letter to Defendants, advising them that a license was necessary in order to perform music in BMI's Repertoire. (Mullaney Decl. ¶ 3.) BMI included an informational brochure and a license agreement with the June 1st correspondence. (*Id.*) Defendants never responded. (*Id.*)

Over the next several months, BMI sent additional letters to Defendants. (*Id.* ¶ 4.) Defendants similarly did not respond to any of those letters either. (*Id.*)

On December 12, 2016, BMI sent Defendants a cease and desist letter instructing them to stop all public performances of BMI-licensed music. (*Id.* ¶ 5.) BMI followed up that initial letter

5

with approximately twelve (12) additional cease and desist letters. (*Id.* ¶¶ 5-7.)

In addition to the letters, BMI licensing personnel contacted or attempted to contact Defendants on numerous occasions. (*Id.* ¶¶ 8-9.) Specifically, BMI personnel visited the Establishment on at least one (1) occasion and telephoned on twenty-seven (27) other occasions. (*Id.* ¶ 9.) On several of these occasions, BMI licensing personnel spoke with personnel associated with the Establishment's operation. (*Id.*) Irrespective of BMI's concerted efforts, Defendants continued to offer public performances of BMI's licensed music and refused to enter into a license agreement. (*Id.* ¶ 10.)

As a result, on April 27, 2018, a BMI employee visited the Establishment. (*Id.* ¶ 11.) The employee made an audio recording of the music played that evening at the Establishment and prepared a written report regarding the same. (*Id.*) The written report identified one (1) of the four (4) music compositions at issue in the case. (*Id.*) Later, a BMI Performance Identification employee reviewed the audio recording to identify and verify any additional recorded musical works. (*Id.* ¶ 12.) That employee confirmed the performance of the composition previously identified as well as the three (3) other compositions at issue in this case. (*Id.*) Defendants did not have a license to perform any of those music compositions. (*Id.* ¶ 17; Compl. ¶¶ 24-25, 29.)

On May 25, 2018, BMI sent a letter to Defendants advising them of the investigation. (Mullaney Decl. ¶ 13.) On June 5, 2018, BMI advised Defendants that they had turned over the matter to its attorneys. (*Id.* ¶ 14.)

### III.    EVALUATION OF PLAINTIFFS' COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

6

Although a defaulting party "'admits the plaintiff's well-pleaded allegations of fact' as to liability, the party in default is 'not held . . . to admit conclusions of law' or allegations regarding liability that are not 'well-pleaded.'" *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (quoting *Ryan*, 253 F.3d at 780)). Consequently, before entering default judgment the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiffs' complaint against the standards of Federal Rule of Civil Procedure 12(b)(6).[4]

Plaintiffs assert claims of copyright infringement against Defendants pursuant to the Copyright Act, 17 U.S.C. § 106. (Compl. ¶¶ 1, 21-30; Pl.'s Mem. Supp. at 2-3.) The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works, and anyone who violates the copyright owner's exclusive rights is considered an infringer. *See* 17 U.S.C. §§ 106, 501(a). For a claim of copyright infringement, a plaintiff must show (1) ownership of the allegedly infringed material and (2) that the alleged infringers violated at least one exclusive right granted to the copyright holders. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted). In the context of music copyrights, the public performance of copyrighted music without permission constitutes infringement. *See EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 504 (E.D. Va. 2009).

Plaintiffs sufficiently establish Defendants committed copyright infringement under the Copyright Act. Plaintiffs are the exclusive copyright owners of the music compositions at issue. (Compl. ¶¶ 4, 25-28, Ex. 1; Williams Decl. ¶¶ 4-5.) Furthermore, Defendants violated Plaintiffs'

---

4. However, unlike when evaluating a 12(b)(6) motion, the Court is not limited to the allegations in the complaint alone. *See, e.g.*, Fed. R. Civ. P. 55(b)(2)(C) ("The Court may conduct hearings . . . [to] establish the truth of any allegation by evidence."); *Brophy*, 771 F. Supp. 2d at 541 (considering "exhibits submitted in support of the Default Motion.").

7

copyrights by performing copyrighted musical compositions without a licensing agreement or otherwise receiving permission. (Compl. ¶¶ 23-25; Mullaney Decl. ¶¶ 3-12.) Therefore, default judgment against Defendants for copyright infringement is appropriate.

## IV.     REQUESTED RELIEF

Plaintiffs seek (1) statutory damages pursuant to the Copyright Act, (2) attorney's fees and costs; (3) post-judgment interest; and (4) permanent injunctive relief pursuant to the Copyright Act. In assessing damages, "a district court entering a default judgment may award damages ascertainable from the pleadings." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998). Therefore, the Court considers each type of Plaintiffs' requested relief in turn.

### A. Statutory Damages Under the Copyright Act

Plaintiffs seek a total award of $20,000 in statutory damages, constituting an award of $5,000 for each of the four (4) infringements. (Mem. Supp. at 3.) Under the Copyright Act, a copyright owner may elect to recover "an award of statutory damages for all infringements involved in the action" rather than actual damages and profits. 17 U.S.C. § 504(c)(1). However, not every copyright owner is eligible to seek statutory damages. *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007). The Copyright Act provides that "no award of statutory damages or of attorney's fees . . . shall be made for [] any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. § 412(1). But should a copyright owner qualify for statutory damages, the Copyright Act affords the Court a great deal of discretion in determining the proper amount of damages. *See White*, 618 F. Supp. 2d at 508. Statutory damages may total "with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). It has long been

8

established that for statutory damages to be "an effective sanction for enforcement of copyright policy," they must be awarded "not merely [to] compel[] restitution of profit and reparation for injury[,] but also [be] designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003).

Plaintiffs qualify for statutory damages. Plaintiffs registered all four (4) works well before the alleged date of infringement. (Compl. ¶ 25, Ex. 1.) Next, the undersigned must determine the appropriate amount of damages. In this instance, Plaintiffs suggest that $5,000 per infringement, a total award of $20,000, is a modest, appropriate, and just amount. (Mem. Supp. at 3-4.) The total award represents a figure that is approximately four (4) times the amount Plaintiffs would have received in licensing fees to date had Defendants entered into a licensing agreement. (*Id.* at 3; Mullaney Decl. ¶ 18.) The per infringement amount represents a little more than three (3) times the current annual license fee. (Mullaney Decl. ¶ 18.)

"Because of the important deterrent purposes served by statutory damages, in cases such as this courts have routinely awarded statutory damages in amounts that arc between two and three times license fees." *White*, 618 F. Supp. 2d at 508-09 (citations omitted); *see also Broadcast Music, Inc. v. Fossils, Inc.*, No. 1:14-cv-755 (LMB/IDD), 2015 WL 4127622, at *2, *9 (E.D. Va. July 7, 2005) (awarding $5,000 per infringement which was roughly three (3) times the annual licensing fee). Plaintiffs' request, therefore, falls within the range of statutory damages other courts in this district have awarded. Moreover, a substantial award is appropriate given Defendants continual failure to sign a simple licensing agreement which would have allowed them to publicly perform Plaintiffs' copyrighted works legally. A refusal made ever more egregious due to the fact that Plaintiffs sent numerous letters, including twelve (12) cease and desist letters, made twenty-seven

9

(27) separate calls to Defendants, and visited the Establishment on at least one (1) occasion. Therefore, because of Defendants' blatant disregard for Plaintiffs' rights, the undersigned will recommend a total award of $20,000 to both remediate Plaintiffs' harm and help deter future infringement.

### B. Attorney's Fees and Costs

Plaintiffs seek to recover $3,630.00 in attorney's fees and costs. (Fee Decl. ¶¶ 5-6, Ex. A.) The amount sought is based on $3,000 in total attorney's fees, which is comprised of 11.7 hours of labor by attorneys David M. Asbury and Elizabeth S. Flowers and by paralegals Amber D. Saunders and Andrew John Wallace Sabo. (*Id.*, Ex. A.) The amount sought also includes $630 in costs. (*Id.*) In support of its request, Plaintiffs submitted an itemized list of the legal services performed, which details the work done, hours expended, and total amount due, as well as an itemized list of costs.[5] (*Id.*)

The Copyright Act allows for the award of reasonable attorney's fees and costs. 17 U.S.C. § 505. Even when a defendant fails to appear, "the Court is nevertheless obligated to review the [attorney's] fee award request independently for reasonableness." *Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 525 (E.D. Va. 2011). The undersigned has reviewed the requested attorney's fees and costs and finds that they are reasonable compensation for the time expended to enforce Plaintiffs' rights. Therefore, Plaintiffs should be awarded their requested attorney's fees and costs.

### C. Post-Judgment Interest

Plaintiffs seek an award of post-judgment interest. (Pl.'s Mem. Supp. at 5.) A court may

---

5. Plaintiffs do not (possibly due to their flat fee agreement) provide a breakdown of the hourly rates for each attorney and paralegal. However, given the low amount requested, the undersigned believes that such a breakdown is unnecessary in this instance in order to determine the reasonableness of the requested fees.

10

allow post-judgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The undersigned finds that entitling Plaintiffs to post-judgment interest is appropriate in this case to ensure that Plaintiffs receive the proper value of the damages awarded against Defendants, regardless as to when Plaintiffs may be able to collect such damages. The post-judgment interest is to be calculated in accordance with 28 U.S.C. § 1961.

### D. Injunctive Relief

Plaintiffs request that this Court enter a permanent injunction enjoining Defendants and "their agents, servants employees, and all persons acting under their permission and authority" from infringing the copyrighted musical compositions licensed by BMI. (Mem. Supp. at 5.)

The Copyright Act provides that a court may grant an injunction to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). If an order is entered granting an injunction, it is binding upon "the parties; the parties' officers, agents, servants, employees and attorneys; and other persons who are in active concert or participation" with the parties so long as they have received actual notice of the injunction. Fed. R. Civ. P. 65(d).

The undersigned determines that a permanent injunction as requested by Plaintiffs is

11

appropriate against Defendants, as all four elements of the Fourth Circuit's test for a permanent injunction are satisfied. First, Plaintiffs suffered and continue to suffer irreparable injury as Defendants still are infringing Plaintiffs' copyrighted musical compositions. (Compl. ¶ 30; Mullaney Decl. ¶ 18.) Further, in copyright infringement cases, "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps*, 492 F.3d at 544. Therefore, the undersigned's aforementioned determination that Defendants infringed Plaintiffs' copyrighted music supports a finding of irreparable injury.

Second, other remedies available at law are inadequate to compensate Plaintiffs. Despite Plaintiffs' repeated attempts to communicate with Defendants prior to and after the commencement of this lawsuit, Defendants refused to respond. The lack of an appropriate response from Defendants shows a threat of continued infringement, as well as a likely lack of cooperation by Defendants with any remedy short of a permanent injunction.

Third, the only hardship that would befall Defendants by granting Plaintiffs' requested permanent injunction would be the requirement to follow clearly established copyright law. Therefore, the balance of hardships weighs in Plaintiffs' favor, as Defendants would face barely any hardship at all.

Fourth and finally, public interest favors an injunction. "It is easy to understand that the public interest reflected in the constitutional protection of copyright, and the Congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place." *White*, 618 F.Supp.2d at 511. Accordingly, Plaintiffs satisfy the public interest prong.

For the aforementioned reasons, the undersigned finds that Plaintiffs' requested permanent

injunction is the best means to prevent future infringement by Defendants.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends that Plaintiffs' Motion for Default Judgment (Dkt. 21) be GRANTED. Default judgment should be entered against Defendants in favor of Plaintiff. Specifically, the undersigned recommends that:

- Plaintiffs be awarded statutory damages in the amount of $20,000, which represents an award of $5,000 for each of the four (4) acts of infringement, pursuant to 17 U.S.C. § 504(c);

- Plaintiffs be awarded attorney's fees and costs in the amount of 3,630.00, pursuant to 17 U.S.C. § 505;

- Plaintiffs be awarded post-judgment interest on its awards in accordance with 28 U.S.C. § 1961;

- Defendants GT Leesburg 2014, LLC and David "Brent" Byer be jointly and severally liable for the damages and fees awarded.

- Defendants GT Leesburg 2014, LLC and David "Brent" Byer, their agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502; and

- Defendant Darlene Byer be dismissed from this action without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send copies of this Report and Recommendation to Defendants at the following addresses of record:

GT Leesburg 2014, LLC d/b/a The Green Turtle
c/o Brent Byer as Registered Agent
18969 Peale Lane
Leesburg, VA 2017

David Brent Byer
David Byer
603 Potomac Station Drive
Leesburg, VA 20176

Darlene Byer
David Byer
603 Potomac Station Drive
Leesburg, VA 20176

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 1, 2019
Alexandria, Virginia